Keith HARRIS, Plaintiff,

v.

Kathleen HUSTON, Defendant.

No. 97–C–786.

United States District Court,
E.D. Wisconsin.

May 21, 1999.

Willie J. Nunnery, Nunnery Law Office, Madison, WI, for plaintiff.

Susan E. Lappen, City Attorney's Office, Milwaukee, WI, for defendant.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

This case arises out of Keith Harris' termination, which was later reduced to a 90–day suspension, from his job as a custodial worker for the Milwaukee Public Library. He sued the city of Milwaukee, the board of trustees of Milwaukee Public Library and city librarian Kathleen Huston, claiming under 42 U.S.C. § 1983 that they violated his rights to procedural due process, substantive due process and equal protection of the laws. The court dismissed the latter two claims, along with the governmental defendants, pursuant to Rule 12(b)(6). Mr. Harris' only remaining claim is that Ms. Huston violated his right to procedural due process when she fired him without giving him an adequate pre-termination hearing.

Before the court is Ms. Huston's motion for summary judgment on the plaintiff's remaining claim. She argues that the undisputed facts establish as a matter of law that Mr. Harris received a constitutionally sufficient pre-termination hearing. I disagree. Although the plaintiff does not raise any disputed issues of material fact, I cannot conclude as a matter of law that the pre-termination hearing in this case met constitutional requirements. The court will deny the motion.

## I. UNDISPUTED FACTUAL BACKGROUND

Ms. Huston fired Mr. Harris' on March 6, 1997, because she had concluded that he had harassed another employee with death threats. (Defendant's Proposed Findings of Fact ["DPFOF"] at ¶ 2.) The employee, Paula Bartsch, said she had received the death threats on her telephone pager the day before while working at the King Library, and the voice that she heard on the pager was Mr. Harris'. (Plaintiff's Proposed Findings of Fact ["PPFOF"] ¶¶ 28–29, 43; Defendant's Reply to PPFOF ["DR"] ¶¶ 29–30.) She claimed that he said "I am going to kill you" or "I am going to kill your white ass." (PPFOF ¶ 30; DR ¶ 29–30.) The plaintiff was working at the Villard Avenue Library on the day that Ms. Bartsch allegedly received the page. (PPFOF ¶ 25.) Ms. Huston based her termination decision on a computer printout showing that the page came from Villard Avenue Library (PPFOF ¶ 43), as well as Ms. Bartsch's identification of Mr. Harris as the caller. (DR ¶ 43.)

On March 6, the day he was terminated, the plaintiff had arrived at work at the Villard Avenue Library at 5:00 a.m. (DPFOF ¶ 3; PPFOF ¶ 32.) At about 11:00 a.m. his immediate supervisor called him and requested that he attend a meeting at the Central Library. (DPFOF ¶ 2; PPFOF ¶¶ 32–33.) When he arrived for the meeting, he was met outside a conference room by union representatives, who told him that the meeting was about his termination. (DPFOF ¶¶ 4–5.) They said they did not know why he was being dismissed. (PPFOF ¶ 49.) Prior to speaking with his union representatives, Mr. Harris had received no notice of what the meeting was about. (PPFOF ¶ 46.)

Also in attendance at the meeting were Ms. Huston, several departmental supervisors, and a secretary. (DPFOF ¶ 6.) No witnesses were present to support the charge against Mr. Harris. (PPFOF ¶ 53.)

According to his deposition testimony, Mr. Harris has trouble remembering what happened after the meeting began, but he does recall that he felt "lost", his "heart just started pounding" and he "just couldn't believe what [he] was in there for." (DPFOF ¶¶ 7, 11.) He also remembers that he was accused of making a harassing phone call in which he threatened to kill another employee. (DPFOF ¶¶ 8–9.) He admits being told that his call had been recorded "in some fashion". (DPFOF ¶ 8.) The plaintiff denied the accusation a number of times. (DPFOF ¶ 12.) At some point during the meeting, Ms. Huston called the plaintiff a liar. (PPFOF ¶ 50.) Near the end of the conference, management personnel said they would discuss what to do with him and return with their decision. (DPFOF ¶ 13.) Before they left, he asked them to take into account that he had a child in college. (DPFOF ¶ 14.) When they returned, Ms. Huston told him that he was dismissed. (DPFOF ¶ 15.)

Mr. Harris appealed the decision to the Library Board's Personnel Committee, and his appeal hearing took place on April 24, 28 and 29. (DPFOF ¶¶ 16–17.) He participated in the hearing, at which a number of witnesses testified and "many people asked questions on his behalf". (DPFOF ¶ 18.) An additional hearing took place in May before the Board of Trustees of the Milwaukee Public Library. (DPFOF ¶ 20.) As a result of the hearings, the board reduced Mr. Harris' punishment to a 90–day suspension. (DPFOF ¶ 21.)

## II. ANALYSIS

■ Public employees who have a property interest in their job are entitled to a "limited" pre-termination hearing, to be followed by a more comprehensive post-termination hearing. *Gilbert v. Homar,* 520 U.S. 924, 929, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997); *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Staples*

*v. City of Milwaukee,* 142 F.3d 383, 385 (7th Cir.1998). The defendant does not dispute that Mr. Harris had a property interest in his employment, and she concedes that he was entitled to a pre-termination hearing. (Defendant's Brief 10; Defendant's Reply Brief 4.) She also does not argue that there were any compelling circumstances that would have permitted her to dispense with the requirement of a pre-termination hearing. *See Gilbert,* 520 U.S. at 932–34, 117 S.Ct. 1807 (no pre-deprivation hearing required where police officer was only suspended, state had strong interest in quickly suspending police officers who were arrested on felony charges, and most important, fact of arrest was independently verifiable without the need for a hearing).

■ The court therefore addresses the only question presented by the defendant's motion: whether Mr. Harris received an adequate pre-termination hearing. The three critical elements of a sufficient pre-termination hearing are (1) oral or written notice of the charges, (2) an explanation of the employer's evidence, and (3) an opportunity to tell his side of the story. *Staples,* 142 F.3d at 385 (citing *Loudermill* and *Gilbert*). The defendant argues that the plaintiff received proper pre-termination process because he was called to a hearing, presented with the allegation and evidence against him, allowed to respond and given an adequate post-termination hearing.

■ Even if I assume that these facts satisfy the second and third elements, I find that the plaintiff did not receive adequate notice. It is undisputed that the plaintiff received no notice, written or oral, of the charge against him until he arrived at the hearing. Under the circumstances, this "contemporaneous" (rather than advance) notice does not meet the requirements of procedural due process.

*Staples v. City of Milwaukee,* not mentioned by the defendant, provides the framework for this court's conclusion. In *Staples,* the court of appeals for the seventh circuit held that the contemporaneous notice given to a city employee during his pre-termination hearing was not sufficient, reversing the district·court's grant of summary judgment in favor of the defendant. 142 F.3d at 385, 387. The plaintiff in *Staples* had become involved in a fistfight with a co-worker. After the incident, the plaintiff received a written notice that a hearing on an unrelated, earlier-filed grievance would take place several days later. *Id.* at 384. At the meeting, however, the plaintiff first learned that the city was in fact holding a pre-discharge hearing regarding the fistfight. *Id.*

The court of appeals held that it could not "find on this record that [the plaintiff] received adequate notice that he was involved in a pretermination procedure." *Id.* at 385. The court reaffirmed its prior holding that due process requires advance notice of the charges and the hearing. *Id.* (referencing *Wallace v. Tilley,* 41 F.3d 296, 300 (7th Cir.1994)). "This does not necessarily mean days or weeks in advance, but even a few hours' warning would permit the employee to gather his thoughts and his evidence and to make an informed decision about the best way to respond to the charges." *Id.* at 386.

The court in *Staples* explicitly did not rule that contemporaneous notice can never satisfy due process. *Id.* at 387. "Whether it does or not", the court stated, "will depend on what has taken place before the hearing, on the nature of the violation the employee is charged with, and on the risk of error if the employee does not have some advance notice of the hearing." *Id.*

Drawing all reasonable inferences from the undisputed facts in Mr. Harris' favor, I believe it is fair assume that he, like the plaintiff in *Staples,* had no idea until the hearing began that the meeting was about a death threat or that his job was in jeopardy. *See id.* I must also credit his testimony that he was surprised and panic-stricken when he was sandbagged with the death-threat accusation. The charge

against him was serious and disputed. Under these circumstances, I conclude that the procedure afforded to the plaintiff did not sufficiently protect against the risk of an erroneous deprivation. *See id.*

The differences between this case and *Staples* are not significant enough to justify a different result. One difference is the fact that Staples, unlike Mr. Harris, was told that his hearing was for an entirely different purpose. This distinction, in my view, is far less significant than the fact that both plaintiffs were surprised by the topic of the hearing and unprepared to respond to the charges. Another difference is that Staples was fired permanently, whereas Mr. Harris' initial firing was later reduced to a suspension. The defendant does not argue, however, that this subsequent reduction of punishment retroactively entitled him to less notice, nor does she otherwise explain how the reduction might affect the court's due process analysis. I believe Ms. Houston has waived any argument along these lines for purposes of the present motion.

■ Finally, the court rejects the defendant's suggestion that the comprehensiveness of Mr. Harris' appeal hearing cures any deficiency in his pre-termination hearing. The three elements of a sufficient pre-termination hearing set forth in *Loudermill* presuppose the existence of a more comprehensive post-termination hearing. 470 U.S. at 546, 105 S.Ct. 1487. That Mr. Harris received a post-termination hearing does not distinguish his case from *Staples,* since in that case the plaintiff appealed his termination to an administrative commission. 142 F.3d at 385.

For the foregoing reasons, I believe that the defendant has failed to demonstrate her entitlement to summary judgment as a matter of law.

It might appear that because the parties have not raised any disputed issues of material fact, partial summary judgment for the plaintiff on the issue of liability is appropriate, despite the lack of a cross-motion. *See* 10A Charles Alan Wright,

Arthur R. Miller & Mary Kay Kane,, *Federal Practice & Procedure* § 2720 at 347 & 347 n. 24 (collecting cases granting summary judgment in favor of the opposing party in the absence of cross-motion). I do not think that would be appropriate in this case because there may be triable factual issues, not raised by the defendant for purposes of her own motion, that preclude partial summary judgment for the plaintiff. *See id.* at 352–53 & 353 n. 31 (before entering summary judgment for the nonmoving party, the original movant should have an adequate opportunity to raise triable factual issues) (collecting cases). For example, a jury could find that Mr. Harris had in fact made the death threats and therefore the jury could disbelieve his claim that he did not know what the hearing would be about. *See Staples,* 142 F.3d at 387 (emphasizing that plaintiff "had no idea his job was on the line").

Therefore, IT IS ORDERED that the defendant's motion for summary judgment be and hereby is denied.

IT IS FURTHER ORDERED that the plaintiff's motion to file a sur-reply brief be and hereby is granted.

IT IS FURTHER ORDERED that the plaintiff shall be entitled to his costs in connection with the motion for summary judgment.